IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE SCRUGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24 C 2712 |
| ) | |
| CHICAGO TRANSIT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Stephanie Scruggs sued her former employer, the Chicago Transit Authority, for disparate treatment and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12112. Scruggs was employed as a bus operator by the CTA. In 2020, a shoulder injury left her unable to drive a bus, and, in 2022, the CTA fired her. The CTA has moved for summary judgment on all of Scruggs's claims. For the reasons described below, the Court denies the CTA's motion for summary judgment.

### Background

The following facts are undisputed unless otherwise noted.

Scruggs was hired by the CTA as a part-time Bus Operator in October 2017. She later held the same position on a full-time basis. She worked out of the 77th Street Garage in Chicago. Scruggs was a unionized employee subject to the CTA's Corrective Action Guidelines, which provide that an employee is absent without leave (AWOL) if she is scheduled to work but fails to contact her immediate supervisor by the end of the

workday. A first offense under the AWOL policy may result in a final written warning, and a second offense is punishable by a referral to the General Manager with a recommendation for discharge.

Scruggs was injured on September 27, 2020. She was scheduled to work two shifts that day. After working the first shift, she napped in her car, woke up, and was standing outside a bus shelter on 79th Street when a person leaned out of a passing car and shot her in the thigh and stomach. Scruggs fell to the ground and lost consciousness. She believed she had been shot with a bullet, but in fact she had been shot by a paintball gun. As a result of her fall, Scruggs injured both shoulders, hips, and knees. She suffered a lasting injury to her left shoulder that required two surgeries. The incident also triggered her preexisting post-traumatic stress disorder. Scruggs was absent from work from the date of her injury until her termination in May 2022.

On the day of her injury, Scruggs submitted an injury-on-duty claim to the CTA's third-party administrator. The claim was denied without explanation. In March 2021, after Scruggs had been absent for several months, Scruggs's supervisor, Phillip Paige, sent her a "five-day letter," which in CTA lingo is a certified letter "sent to [bus] operators who are off work without an approved leave" to inquire "why they would continue to be off work without leave and whether or not they plan to return to work at any time." Def.'s L.R. 56.1 Stmt., Ex. R, at 13:16–20. The letter directed Scruggs to report to her work location to explain her absence or document why she could not report to her work location. Scruggs reported to the 77th Street Garage and stated that she intended to request an accommodation.

In April 2021, Scruggs submitted an accommodation request to the CTA's

Accommodation Review Committee, which considers accommodations within the employee's existing position or in alternative positions. *See id.*, Ex. T. Scruggs's request included documentation from a physician stating that Scruggs required surgery for her left shoulder, could not drive, and would be limited in her ability to drive for eight to twelve months after her surgery. *Id.* The date of the surgery was not specified. The CTA denied the request. *See id.*, Ex. U. The denial letter stated: "[T]he Committee has determined that you cannot perform the essential functions of your position, Bus Operator. The Committee, however, is neither aware of a reasonable accommodation that would allow you to perform your position's duties due to your current medical restrictions, nor of an open position at CTA for which you are qualified and eligible to fill." *Id.*

The evidence before the Court reflects that the CTA administers a program entitled Transitional Return to Work (TRTW), which provides temporary reassignments to certain injured employees. Employees are eligible for TRTW after the CTA's third-party administrator certifies that the employee suffered an injury on duty, "an injury . . . sustained by an employee that arises out of and in the course of CTA employment." Def.'s L.R. 56.1 Stmt., Ex. I at 1. The employee must have "temporary physical or mental limitations [that] prevent them from performing their regular duties[.]" *Id.* at 3. A physician must evaluate the employee and a "written prognosis must provide for a full recovery within six months." *Id.* TRTW placements are subject to the CTA's business needs and last a maximum of ninety days. *Id.* at 3, 5. The employee's department determines if a placement is available. According to Scruggs, some injured bus

3

operators held TRTW positions at the 77th Street Garage.[1] The CTA maintains that Scruggs could not receive a TRTW placement because the CTA's third-party administrator had denied her injury-on-duty claim. Scruggs submitted requests for other disability accommodations and forms of leave, which were also denied.

In March 2022, a physician stated that Scruggs had been medically unable to work since the date of her injury because she could not drive long distances or for over thirty minutes. The physician estimated that Scruggs would be able to return to work on December 30, 2022. In April 2022, the physician cleared Scruggs to work but prohibited her from driving a commercial vehicle, using her arm above the shoulder, repetitive pulling or pushing, and lifting over five pounds. At an April 11, 2022 meeting, Scruggs says that Paige told her, "[u]nless you come back full-time driving a bus, we're not going to let you back in." *Id.*, Ex. C, at 93:22–24. On April 20, 2022, Paige sent Scruggs a second five-day letter requiring her to report to work. Paige then sent a recommendation to another manager to discharge Scruggs for failing to comply with the CTA's AWOL policy. In May 2022, Scruggs was fired for violating the AWOL policy by being absent from work since September 2020 without an approved leave.

---

[1] The parties dispute this fact, and the CTA points out that Scruggs merely observed bus operators performing clerical or janitorial tasks without knowledge of whether those employees qualified for TRTW positions. Additionally, the CTA urges that its statement of material facts should be admitted in its entirety because Scruggs admits all but fifteen facts, and with respect to those fifteen facts, "(1) improperly responds with qualified admissions, (2) fails to admit or deny, and/or (3) fails to specify and support her denials." Def.'s Reply in Supp. of Mot. for Summ. J. at 1–2. It is true that Scruggs did not rigorously comply with Local Rule 56.1. But the contested facts, including whether other bus operators were placed in temporary positions through the TRTW program, are not material to the present motion. Although the stringency of the application of the local rules "is left to the district court's sound discretion[,]" the Court relies only on factual contentions supported by the record. *See Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016).

On April 22, 2022, before she was discharged, Scruggs injured both shoulders through a fall unrelated to her work at the CTA. She had a left shoulder replacement as well as surgery on her right shoulder (the specifics of the latter are not clear to the Court). Scruggs reported the injury to the CTA's third-party leave administrator but not to Paige.

In October 2022, Scruggs filed a disability discrimination complaint with the Equal Employment Opportunity Commission (EEOC). In August 2023, the EEOC issued Scruggs a notice of right to sue. In November 2023, Scruggs filed in state court a civil suit against Andrew Scott, an employee of the CTA. Scruggs later named the CTA as the sole defendant, and the CTA removed the case to federal court under 28 U.S.C. § 1441(a).

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the party that bears the ultimate burden at trial must identify "specific, admissible evidence showing that there is a genuine

5

dispute of material fact for trial." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

**A.     Disparate treatment**

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability[.]"  42 U.S.C. § 12112(a).  A plaintiff alleging disparate treatment under the ADA must prove that "(1) [the] plaintiff was disabled; (2) [the] plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the 'but for' cause of adverse employment action."  *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).  In contrast to the Rehabilitation Act, 29 U.S.C. § 794, under which "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action[,]" under the ADA, the plaintiff's disability need only "be *a* reason for the challenged action."  *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021).  Although parties litigating a disparate treatment claim under the ADA may invoke the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), neither party has done so here, so the Court does not apply it.

The CTA does not dispute that Scruggs had a disability resulting from her injuries on September 27, 2020.  The record shows that Scruggs had a very limited range of motion in her left arm, which precluded her from driving a commercial vehicle and performing other functions required of a bus operator.  A reasonable jury could find that Scruggs had a disability.

The parties dispute whether Scruggs was a "qualified individual" within the meaning of the ADA. Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Even if a plaintiff cannot perform the essential functions of her position, a plaintiff is a qualified individual if she establishes "that she was qualified to perform the essential functions of another vacant position" that she desires. *Conners*, 984 F.3d at 1262. "[A plaintiff's] ability to come to work, or to otherwise perform the essential functions of her job [or another vacant position], is examined as of the time of the adverse employment decision at issue." *Basden v. Prof'l Transp., Inc.,* 714 F.3d 1034, 1037 (7th Cir. 2013).

Courts have developed a two-step test to assess whether a plaintiff is a qualified individual under the ADA. Courts first look at the "basic qualifications required for the position, such as educational prerequisites, employment experience, skills, or licenses[,]" and then turn to "whether the plaintiff can perform the essential functions of the job with or without reasonable accommodations." *Conners*, 984 F.3d at 1261. Then, to assess the "essential functions" of a job, "we consider the employer's judgment, the employee's written job description, the amount of time the employee spends performing that function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers." *Id.* (quoting *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 242 (7th Cir. 2018)); *see* 42 U.S.C. § 12111(8).

It is uncontested that Scruggs possessed the basic qualifications for her position, so the Court focuses on the second step of the qualified individual inquiry. The CTA argues that Scruggs was not a qualified individual because she did not report to work "for over 600 days (from September 27, 2020 until her discharge date, May 23, 2022), because of her injury." Def.'s Mem. in Supp. of Mot. for Summ. J. at 5. This fact is undisputed. For much of this period, Scruggs was not cleared to work by her physician. But the CTA's response sidesteps the relevant inquiry, which is whether, on the date of her termination, Scruggs could come to work and perform the essential functions of her position or another vacant position. *See Basden,* 714 F.3d at 1037.

Before Scruggs's termination in May 2022, she was cleared to return to work, but she could not drive a commercial vehicle, lift more than five pounds, perform repetitive pushing or pulling, or lift her arm above her shoulder. *See* Resp. to Def.'s L.R. 56.1 Stmt., Ex. L. Scruggs concedes that she was unable to perform at least one essential function of her job as a bus operator, namely, driving a commercial vehicle. *See* Def.'s L.R. 56.1 Stmt., Ex. D, at 1–2 (describing one of the "primary responsibilities" of a "bus operator" as "driv[ing a] bus" and listing physical requirements including lifting, carrying, pulling, and reaching).

Still, a plaintiff may "show that she was qualified to perform the essential functions of another vacant position[,]" and it is "her burden to prove that there was a vacant position for which she was qualified." *Conners*, 984 F.3d at 1262. Scruggs testified that she observed other injured bus operators performing clerical and janitorial tasks as they recovered from physical and mental injuries. Scruggs desired a similar

8

temporary, light duty position under the CTA's TRTW program, and a reasonable jury could find that she could perform the essential functions of such a position.[2]

A reasonable jury could find that Scruggs identified vacant temporary positions for which she was eligible as part of the TRTW program.[3] The CTA maintains that Scruggs was ineligible because its third-party administrator did not certify that Scruggs suffered an injury on duty. The CTA defines an injury on duty as an injury "sustained by an employee that arises out of and in the course of CTA employment." Def.'s L.R. 56.1

---

[2] The Seventh Circuit has taken inconsistent positions on whether an individual can be qualified under the ADA to perform the essential functions of a *temporary* vacant position. *Compare Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 696–97 (7th Cir. 1998) ("[I]f an employer already has a vacant light duty position for which an injured worker is qualified, it might be a reasonable accommodation to reassign the worker to that position. If the position was created as a temporary job, a reassignment to that position need only be for a temporary period." (quoting *EEOC: Technical Assistance on Title I of ADA,* 8 FEP Manual (BNA) § 9.4 at 405:7057–58 (1992))), *with McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997) (holding that the plaintiff failed to carry his "burden of showing that a vacant position exists and that the plaintiff is qualified for that position" because "[o]ccasional opportunities to work in another department are not equivalent to a vacancy for a permanent position"), *and Arce v. Chicago Transit Auth.*, 738 F. App'x 355, 358–59 (7th Cir. 2018) (affirming grant of summary judgment for the CTA as the plaintiff "put forward evidence of light-duty *assignments*, but no permanent, vacant *positions* for which he was qualified"). In its discussion related to its light duty program, the CTA cites *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017), where the Seventh Circuit held that an employee failed to carry his burden to identify a vacant position available at the time of his termination because the employer provided only ad hoc, temporary light duty assignments for one or two days as "acts of grace." *Id. McCreary* reasoned similarly. *See McCreary*, 132 F.3d at 1165. By contrast, there is evidence here that, unlike the employer in *Severson*, the CTA "had a policy of crafting light-duty positions for employees injured on the job." *Severson*, 872 F.3d at 483. Notwithstanding the Seventh Circuit's nonprecedential decision in *Arce*, the CTA's policy makes Scruggs's situation distinguishable from *Severson* and *McCreary* and leads the Court to conclude that, in this case, temporary vacant positions may support the qualified individual prong of the ADA.

[3] The CTA contends that Scruggs has waived any argument that she was eligible for TRTW. The Court does not agree, as Scruggs argues that she was qualified to perform light duty work and was instead terminated.

9

Stmt., Ex. I at 1. Scruggs was injured after she had worked one of her two shifts on September 27, 2020, while standing outside a bus shelter and waiting to relieve another bus driver and begin her second shift. *See id.*, Ex. C, at 109:9. A reasonable jury could find that Scruggs was on duty at that moment. A reasonable jury could also find that Scruggs's injury was temporary and that there was a genuine dispute as to whether her physician's prognosis provided for a full recovery within six months of her latest medical evaluations before termination. In March 2022, Scruggs's physician listed her expected return to work date as December 30, 2022 and stated that she was totally unable to work in the meantime, with future limitations depending on her physical therapy progress. *Id.*, Ex. M. Just one month later, the same physician deemed Scruggs eligible to work with restrictions on driving and other physical tasks. *Id.* Given Scruggs's rapid, significant progress and the lack of subsequent medical evaluations in the record, as well as the ambiguity in her physician's prognosis, a reasonable jury could find that Scruggs would have been able to return to work within six months, by the end of November 2022.[4] (There is also arguably some evidence—testimony by Scruggs—that might support a contention that there were available positions outside of the TRTW program, but the Court need not address that here.)

As for the final element of a disparate treatment claim, a reasonable jury could find that Scruggs's disability was a reason for her discharge. When Scruggs received a five-day letter and reported to her worksite on April 11, 2022, her supervisor told her,

---

[4] It appears that Scruggs re-injured her shoulder on April 22, 2022 when she slipped and fell at a Walmart store. *See* Def.'s L.R. 56.1 Stmt. ¶ 76; Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 75 [sic]. But the CTA does not argue this point in its opening or reply brief, so the Court does not address it here.

"[u]nless you come back full-time driving a bus, we're not going to let you back in." *Id.*, Ex. C, at 93:22–24. That statement, together with the other evidence, would permit a reasonable jury to find that Scruggs was fired because of her disability: Scruggs's disability temporarily prevented her from operating a commercial vehicle, and Paige threatened to fire her for that very reason.[5] It is by no means indisputable that Scruggs was discharged because of her disability, and "an employee's absenteeism . . . can be a legitimate, nondiscriminatory reason for termination even if it is caused by an employee's disability." *Beal v. Chicago Transit Auth.*, No. 23 C 1387, 2025 WL 2173726, at *16 (N.D. Ill. July 31, 2025). But Scruggs has presented enough evidence to create a genuine factual dispute regarding whether her disability was a reason for her discharge. She is therefore entitled to a trial on her disparate treatment claim.

**B.    Failure to accommodate**

An employer violates the ADA, 42 U.S.C. § 12112(a), by failing to make reasonable accommodations "to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless . . . the accommodation would impose an undue hardship on" the employer. *Id.* § 12112(b)(5)(A). "A reasonable accommodation is a measure that enables the employee to 'perform the essential functions of the employment position.'" *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1053–54 (7th Cir. 2024) (quoting 42 U.S.C. § 12111(8)).

---

[5] The CTA also argues that Scruggs waived her argument on causation. The Court disagrees, as Scruggs's quotation of Paige's comment suffices to show the existence of a genuine dispute of material fact. Additionally, to prevail on her claim, Scruggs is not required to point to a similarly situated comparator, as the CTA argues. *See Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (noting that a similarly situated comparator is one of several forms of circumstantial evidence of causation for a disparate treatment claim under the ADA).

"A claim for failure to accommodate under the ADA . . . requires proof [that the] (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Scheidler*, 914 F.3d at 541. A reasonable accommodation can take many forms, including "reassignment to a vacant position[.]" 42 U.S.C. § 12111(9)(B). "If the plaintiff establishes these elements of the prima facie case, the burden shifts to the employer to prove that the requested accommodation would impose an undue hardship." *Conners*, 984 F.3d at 1261.

As explained in the Court's analysis of the disparate treatment claim, a reasonable jury could find that Scruggs was a qualified individual with a disability. The evidence also supports a finding that the CTA was aware of this disability through Scruggs's repeated requests for accommodation and leave, which began with an injured-on-duty claim filed on the date of her initial injury.

There is a genuine factual dispute regarding whether the CTA failed to reasonably accommodate Scruggs's disability. Scruggs requested a textbook reasonable accommodation: reassignment to a vacant position. Specifically, she sought a light duty position that would allow her to work despite her temporary inability to drive. Given that the CTA has thousands of employees, a reasonable jury could find that Scruggs's request for a temporary position in which she could perform light duty work was reasonable. It strains credulity to imagine that no light duty position was available, whether at the 77th Street Garage or at another site. The CTA fails to identify any record evidence demonstrating a lack of vacant positions for which Scruggs was qualified, either with or without a reasonable accommodation. Nor has the CTA argued

that it would have faced undue hardship by assigning Scruggs to a temporary light duty position. The CTA had a program for accommodating injured employees, and the Court finds a genuine dispute as to whether Scruggs qualified for it, as discussed earlier. *See Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 506 (7th Cir. 2020). Accordingly, Scruggs is entitled to a trial on her failure to accommodate claim.

## Conclusion

The Court denies the CTA's motion for summary judgment [dkt. 53]. The case remains set for a jury trial on April 6, 2026. The final pretrial order is to be filed by March 9, 2026, and the final pretrial conference is set for March 24, 2026 at 3:00 p.m. The case remains set for a telephonic status hearing on January 14, 2026 at 9:10 a.m. to discuss the possibility of settlement. The Court also notes that the CTA's counsel has now identified a conflict regarding the April 6 trial date. The Court advises that if the parties are in agreement on a trial date of April 27, 2026, the Court will consider moving the trial from April 6; otherwise, no. This will be discussed further at the January 14 status hearing.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 8, 2026